HINKLE et al. v. THOMPSON et al.
(No. 169.)

(Court of Civil Appeals of Texas. Beaumont.
March 22, 1917. Rehearing Denied
May 9, 1917.)

1. DISMISSAL AND NONSUIT ☞60(1)—WANT
OF PROSECUTION AFTER CHANGE OF VENUE
—DISCRETION OF COURT.

A motion to dismiss for want of prosecution
after allowance of change of venue is addressed
to the sound discretion of the trial court.

[Ed. Note.—For other cases, see Dismissal and
Nonsuit, Cent. Dig. §§ 140, 145, 146, 150, 151.]

2. VENUE ☞79—CHANGE OF VENUE—DUTY
OF PLAINTIFF.

Although defendant secured transfer of
cause on plea of privilege and although it was
the clerk's duty to comply with the order, it
was plaintiff's duty to see that transfer was
actually effected within reasonable time.

[Ed. Note.—For other cases, see Venue, Cent.
Dig. §§ 138, 140.]

3. VENUE ☞79 — CHANGE OF VENUE — EX-
CUSE FOR DELAY.

Where after the cause was ordered trans-
ferred to another county plaintiff was inform-
ed by clerk that papers could not be found, it
was plaintiff's duty to ascertain from clerk of
other county whether transfer had been effected,
and plaintiff had no right to assume that the
order had been complied with.

[Ed. Note.—For other cases, see Venue, Cent.
Dig. §§ 138, 140.]

4. VENUE ☞79 — CHANGE OF VENUE — AC-
QUIESCENCE IN PLAINTIFF'S DELAY.

The fact that defendant's counsel inquired
of clerk regarding change of venue ordered, and
whether plaintiff intended to prosecute cause, did
not show acquiescence in plaintiff's delay in
having the records transferred, since defendant
was entitled to keep himself informed of the
status of the case.

[Ed. Note.—For other cases, see Venue, Cent.
Dig. §§ 138, 140.]

5. DISMISSAL AND NONSUIT ☞81(6) — REIN-
STATEMENT—DEPOSITIONS.

The fact that defendant could have taken
depositions of scattered witnesses is not con-
clusive that he would have suffered no injury by
reinstating the cause after plaintiff's failure to
prosecute it, since it cannot be said that such
evidence would be of the same value as testimony
taken in court.

[Ed. Note.—For other cases, see Dismissal and
Nonsuit, Cent. Dig. § 187.]

6. DISMISSAL AND NONSUIT ☞60(1) — WANT
OF PROSECUTION—ABROGATION OF COMMON-
LAW RULE.

The common-law rule that if plaintiff leave
a "chasm" in prosecution of his suit, the cause
was discontinued by operation of law has been
abrogated in this state.

[Ed. Note.—For other cases, see Dismissal and
Nonsuit, Cent. Dig. §§ 140, 145, 146, 150, 151.]

7. VENUE ☞79—CHANGE OF VENUE—REASON-
ABLE TIME.

After order allowing change of venue under
Vernon's Sayles' Ann. Civ. St. 1914, arts. 1832,
1833, plaintiff must effect actual transfer of
records and entry on the docket of the other
court within a reasonable time, which depends
upon the particular case and is within the court's
discretion.

[Ed. Note.—For other cases, see Venue, Cent.
Dig. §§ 138, 140.]

8. DISMISSAL AND NONSUIT ☞81(7) — WANT
OF PROSECUTION—REINSTATEMENT—CONCLU-
SIVENESS OF PLAINTIFF'S STATEMENT.

Plaintiff's statement that it was not his in-
tention to abandon prosecution, after his de-
lay in effecting ordered change of venue, is not
conclusive in application to reinstate cause.

[Ed. Note.—For other cases, see Dismissal and
Nonsuit, Cent. Dig. §§ 188, 190, 192.]

9. APPEAL AND ERROR ☞962—COURT'S DIS-
CRETION—DISMISSAL.

It is the duty of the appellate court to sus-
tain trial court's action in dismissing a cause
for failure to prosecute same after order al-
lowing change of venue, unless there has been
an abuse of discretion.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 3838.]

10. DISMISSAL AND NONSUIT ☞81(7)—WANT
OF PROSECUTION — REINSTATEMENT—ADMIS-
SION OF EVIDENCE.

In application to reinstate a cause after
failure to perfect change of venue ordered, re-
fusal to hear testimony of plaintiff's attorney
was not an abuse of discretion, where the same
matter had been covered by affidavits.

[Ed. Note.—For other cases, see Dismissal and
Nonsuit, Cent. Dig. §§ 188, 190, 192.]

Appeal from District Court, Hardin Coun-
ty; L. B. Hightower, Sr., Judge..

Action by Mrs. Alice Hinkle and others
against F. L. Thompson and others. Plain-
tiffs appeal from an order refusing to re-
instate cause after dismissal. Affirmed.

John Lovejoy, Presley K. Ewing, L. E.
Blankenbecker and E. T. Chew, all of Hous-
ton, and A. L. Bevil, of Kountze, for appel-
lants. Chas. D. Smith and M. M. Mothner,
both of Beaumont, for appellees.

HIGHTOWER, Jr., C. J. This is an ap-
peal from an order of the district court of
Hardin county, dismissing and refusing to re-
instate, or, perhaps, more accurately speak-
ing, refusing to reinstate, after dismissing,
this cause on the docket thereof. What we
might term the "pleadings" herein, that is
to say, appellees' motion to dismiss the cause,
and appellants' answer in reply thereto, as
well as appellants' motion to reinstate, and
appellees' reply thereto, are very voluminous,
and this court could not be expected to set
out at length these pleadings, but can only
state, substantially, the contentions of the
parties.

This suit was filed on the 10th day of June,
1913, in the district court of Harris county,
against the appellees, F. L. Thompson and
W. A. Thompson, alleged to be partners, for
damages averred to have been caused to the
plaintiffs by reason of the death of William
Marion Hinkle, the husband of the appellant,
Mrs. Alice Hinkle, and the father of the
other appellants. It was alleged, substan-
tially, that the said William Marion Hinkle,
while in the employ of the appellees, as a
fireman in the Humble oil field, was in-
stantly killed on or about May 14, 1913, in
consequence of the explosion of defendants'
boiler, which was being fired by deceased.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It was alleged that such injury and death was caused by negligence of appellees, and several specific grounds of negligence were charged in the petition, but it is unnecessary for the purposes of the disposition of the case before us to further mention the pleadings touching the merits of the suit. Suffice it to say that the petition of appellants stated a cause of action against appellees growing out of the death of said William Marion Hinkle.

In due time, the defendant F. L. Thompson filed in the district court of Harris county his plea of privilege to be sued in Hardin county, alleging in his plea that he was a resident of Hardin county, and that he was the sole owner of said oil properties and boiler, and that he had no partnership relation with his codefendant, W. A. Thompson, who resided in Harris county. This plea of privilege, it seems, was continued by the parties, by agreement, for several terms of the court, and finally, on June 26, 1914, the plea of privilege was heard and sustained by the district court of Harris County, and the cause was ordered transferred to the district court of Hardin county, in accordance with the statute.

This cause was not, however, transferred or filed in the district court of Hardin county until October 19, 1915, and in November, 1915, the plaintiffs filed their first amended original petition in the district court of Hardin county. Thereafter, on March 5, 1916, the defendants filed a motion in the district court of Hardin county, seeking to have the suit dismissed and stricken from the docket, on the ground that the plea of privilege was sustained in the district court of Harris county on June 26, 1914, but that the suit was never transferred or filed in the district court of Hardin county until October 19, 1915, claiming that the lapse of time between the sustaining of the plea by the district court of Harris county and the transfer and filing of the cause in the district court of Hardin county was tantamount to an abandonment by plaintiffs of their suit and cause of action. On the 1st day of March term, 1916, the district court of Hardin county, by agreement of the attorneys for appellants and appellees, set the motion to dismiss for hearing on April 4, 1916, at which time said motion was heard and granted, and the cause was, by order and judgment of the court, dismissed and stricken from the docket. Thereupon appellants, in due time, filed a motion to reinstate the cause, which motion was later amended, and appellees filed their reply thereto, which motion of appellants was heard by the court on April 22, 1916, and was overruled by the court, to which action of the court in failing and refusing to reinstate the cause, appellants excepted in open court, and gave notice of appeal to this court.

The sole question for decision by this court at this time is whether or not the district court of Hardin county abused its discretion in dismissing this cause from its docket, and in refusing to reinstate the same.

The first assignment of error found in the brief of appellants is as follows:

"The district court erred and clearly abused its discretion in sustaining the motion to dismiss, and thereon dismissing the cause, in that it appeared from the face of defendants, particularly in connection with the sworn answer thereto on file, that the cause had not been abandoned, and that there was no such lack of diligence in its prosecution as would warrant the drastic course of a dismissal."

The proposition following this assignment is:

"It is error for the court to dismiss and strike from its docket on motion of defendants, a case transferred from another county, on account of delay in the transfer of the record in the case, when it conclusively appears that there has been no abandonment of the suit by the plaintiffs, and no undue want of diligence."

In their motion to dismiss the cause, appellees alleged, substantially, that the plea of privilege was sustained on June 26, 1914, and that appellants did not appeal therefrom and never paid the costs which accrued in the district court of Harris county, and that the record in said cause was never transferred or filed in Hardin county until October 19, 1915, after two terms of the court of Harris county had been held and the third was well is session and long after appellees supposed that said suit was abandoned by appellants; that when the cause was ordered transferred, the record and papers in said cause were not transferred, but only the original citation was finally transferred, together with a receipt for all the other papers in said cause executed by attorneys for appellants, and also a copy of the court's order sustaining the plea, etc. Appellees then say, in effect, that the cause of action ought to be treated by the district court of Hardin county as abated and discontinued and barred by limitation, and should therefore be dismissed.

Appellees then further contended that if it should be held that said cause of action did not abate, and was not discontinued by operation of law, and should not be dismissed and stricken from the docket solely on such grounds, then, in that event, appellees contended that as a matter of equity appellants should not now be permitted to further prosecute said cause, and that the same should be dismissed, because appellees had more than one valid defense to said suit, but in particular, appellees alleged and could and would have shown by competent testimony that the boiler in question was in good condition, and had, just before the explosion, been carefully and officially inspected and pronounced to be in good condition, and could not and would not have exploded, if looked after properly by deceased, and that the same had sufficient appliances for all ordinary purposes; that de-

ceased knew the actual condition of the boiler and appliances, and that if the same had been operated with proper care and prudence on his part, the same could and would have been properly operated indefinitely with safety, and that the death of deceased was the proximate result of his own negligence, in that when he went on duty he fired up said boiler, and after getting up high pressure of steam, he negligently left the boiler room and took a seat outside the door, and negligently permitted himself to go to sleep, and, the boiler being unattended and unlooked after, and the steam having increased to the highest possible pressure and power, and beyond the capacity of the boiler, same exploded, etc.

It was further urged by appellees that they stood ready at all times to answer in said cause, and to set up and establish their defense thereto, and that they went about to prepare, as much as they could in the then status of the case, to defend the same at the next term of the district court of Hardin county, after the cause had been ordered transferred from the district court of Harris county; that they were prepared and held themselves in readiness to try said suit, and to set up and establish all their defenses thereto when the district court of Hardin county met next after the plea of privilege was sustained; that they were in touch at all times, and remained in touch with all their witnesses; and that their witnesses, when the district court of Hardin county did next convene, after the order of transfer, were within reach of the district court of Hardin county, and were ready, able, and willing, and under promise to be in attendance upon the court at said term thereof.

Appellees further alleged in this motion that they did not know at said time why the cause had not been transferred, except upon the hypothesis that the suit was abandoned, but that nevertheless, at the next succeeding term of the district court of Hardin county, they again stood ready to set up and establish their defenses, and that they again, as before, seasonably prepared and made ready for trial, as best they could under the then status of the case, so that if plaintiffs were allowed to prosecute said suit, they would be prepared to establish their defenses when said second term of court did convene, and remained in touch with all their witnesses, who were in reach and ready to attend; that when the second term of the district court of Hardin county convened, which was on March 29, 1915, the record in this cause not having been transferred to Hardin county, appellees could have answered and defended said suit and disposed of same at that time, and that the district court of Hardin county again convened on September 27, 1915, and the record had not yet been transferred and filed in the district court of Hardin county.

Appellees further alleged in the motion that they thought the suit had been permanently abandoned by appellants, and further alleged that their witnesses had become scattered and beyond the reach and process of the court, and that now their main and most important witness, in connection with the theory of the defense above outlined, had left the country, and, as the appellees believed, was then beyond the territorial limits of the United States, and that, although appellees had diligently sought to find said witness, they had been unable to locate him, and appellees were unable to locate him anywhere, although they had for months made continuous and diligent effort to do so, etc. The name of this witness specifically mentioned by appellees is Taylor.

Appellees then further alleged that if said suit had been transferred and the papers filed at the first or second term of the district court of Hardin county, after said plea had been sustained, the witness Taylor would have been in attendance, and would have fully testified to the main defense which appellees had to plaintiffs' cause of action, and so on.

Appellees further alleged in the motion that other witnesses, without specifically naming them, had scattered, and their whereabouts were also unknown to appellees, and that, although they had tried to locate them by diligent inquiry, they had been unable to do so.

In reply to appellees' motion to dismiss, which is but very briefly stated above, appellants admitted the order of transfer to Hardin county on June 26, 1914, and alleged that pending the hearing on the plea of privilege in Harris county, the same was several times continued by agreement of plaintiffs' counsel; that after the plea of privilege was sustained, counsel for plaintiffs considered that the order of the court would be obeyed by the clerk, and that the papers and cause would be transferred to the district court of Hardin county, and thereafter gave the matter little consideration until the convening of the district court of Hardin county for the fall term, the plea having been sustained, as aforesaid, in June; that at said time counsel for plaintiffs made inquiry of the clerk in Harris county as to the transfer of the papers, but could get little information about the matter. It was further alleged by appellants that an election had been held in Harris county in June, 1914, at which time a new clerk was elected for the district courts there; that at the election of the new clerk nearly all of the deputies that the former clerk had in the office were dismissed, and that along with the new clerk came a new deputy clerk in the court in which the plea had been pending, the one in charge of the papers when the plea was sustained having been dismissed; that therefore, when counsel for plaintiffs inquired of the

new clerk and the new deputy as to the transfer of the papers in the case, he got little information; that counsel for plaintiffs had the new deputy clerk, in the court in which the plea had been sustained, to make search for the papers; that, the papers not being found, it was the belief of counsel that the papers had been transferred to Hardin county; that counsel for plaintiffs, expecting a reciprocal return of the courtesies which had been extended to defendants' counsel while the plea of privilege was pending, addressed and sent a letter to the latter in the fall of 1914, copy of which had been misplaced at the time this answer was filed, but which was found and presented to the court on motion to reinstate the cause, and which letter, claimed to have been written and sent, was as follows:

"September 22, 1914.

"Messrs. Smith & Mothner, (These gentlemen were then attorneys of record for appellees.) Beaumont, Texas.—Gentlemen: It is impossible for me to try at the term of the district court about to be convened at Kountze, Texas, our case of Hinkle v. Thompson. You know more than I do about the term of court over there, and I wish you would agree to continue same generally, for the term soon to convene, and write me when the court will meet again. I have some depositions to be taken, and I will attempt to be ready at the succeeding term. Please let me hear from you.

"Yours very truly,     E. T. Chew."

It was further alleged by appellants that on April 29, 1915, not having received a reply to this letter, they, as attorneys for appellants, addressed and sent the following letter to appellees' counsel:

"April 29, 1915.

"Messrs. Smith & Mothner, Attorneys at Law, Beaumont, Texas—Gentlemen: Some months ago I wrote you, making inquiry as to the status of the case of Hinkle v. Thompson, transferred from Harris county. I was not favored with a reply. If I remember right, I did everything in my power to give you gentlemen information concerning your plea of privilege in this case while it was pending in Harris county, and saw myself that the order postponing said plea provided that the postponement was without prejudice. I am sure that my letter was overlooked, and I have felt sure that no action would be taken in this case without informing me. I have tried to learn from the clerk here on several occasions if the papers had been transferred, and I have not yet had definite information about this matter. Will you please advise me as to your information concerning this case? I inclose two-cent stamp for reply.

"Yours very truly,     E. T. Chew."

It was further alleged by appellants in this reply that some time after writing the last letter just above mentioned, counsel for appellants learned that the papers had not been transferred, and he immediately went to the district clerk of Harris county and caused a diligent search to be made in the office of said clerk for said papers, but same could not be found; that a receipt for the papers, signed by counsel for appellants, dated prior to the hearing of the plea of privilege, was found, but that the papers were present at the hearing of the plea of privilege, and were left in court, and never taken out by appellants' counsel; that thereafter, on several occasions, counsel for appellants kept after the clerk of Harris county to find the papers and transfer this cause, as ordered, but that on each occasion the papers could not be found. Appellants' counsel further alleged that some time in the summer of 1915, counsel for appellants had a talk with Mr. Smith, counsel for appellees, in Houston, concerning the location of the papers, and he (Smith) stated to counsel for appellants that he would look among the papers at Beaumont, that probably he had the papers there, and that Mr. Smith, some time thereafter, wrote appellants' counsel that he could not find the papers. It was then alleged that a few days prior to this conversation, Mr. Vinson, of the law firm of Townes & Vinson, called Mr. Chew over the phone, claiming to represent the appellees, and inquired of the status of the case, whereupon he (Vinson), was informed of the papers being misplaced, and Mr. Chew asked Mr. Vinson for an agreement to substitute them, to which Mr. Vinson, as alleged by appellants, saw no objection, agreeing to take the matter up with F. L. Thompson. Appellants further alleged that after finding the papers could not be located, counsel for appellants demanded of the clerk of Harris county to transfer whatever papers he did have, if nothing more than the docket number, and such a transfer was accordingly made. It was further alleged that appellees never at any time had any reason or excuse to entertain the idea that appellants did not intend to prosecute this cause; that long after the order of transfer was made, and before the record was transferred to Hardin county, counsel for appellees had a conference with counsel for appellants, in which counsel for appellees suggested a settlement of the case, and offered to compromise, etc. Appellants further alleged that it was not true, as claimed by appellees, that they did not know why it was that said suit had not been transferred, because counsel for appellees during said time was in Houston, and called on the district clerk there to look up the papers and have them forwarded. Finally, appellants alleged that the failure to transfer this cause from Harris county to Hardin county was due to the loss of the papers in the change of the personnel of the district clerk's office in Harris county, who evidently, in the rehandling of the papers, had misplaced them, and could not be charged to appellants, who have been put to great inconvenience and great annoyance. This answer was sworn to by Mr. E. T. Chew, as attorney for appellants, as was also the motion to dismiss duly sworn to.

Appellees filed a reply to the above-mentioned answer of appellants, in which their counsel denied receiving the first of the above-quoted letters, which was written in the early fall of 1914, but admitted receiving the second one, which was written

in the following spring, or, to be more definite, on April 29, 1915. In this reply it is alleged by appellees that when the said letter of April 29, 1915, was received, they had long theretofore supposed that the same had been abandoned. Appellees then further replied that on May 4, 1915, their counsel wrote appellees' counsel, Mr. Chew, a letter, in which the only matter believed to be material contained therein is that they, counsel for appellees, assumed that the litigation had been abandoned. By this reply, appellees also stated that any offer that their counsel, Mr. Smith, might have made to counsel for appellants, with a view to settling or compromising, was only to pay an insignificant and nominal amount, merely for the purpose of avoiding the expense of the contest, etc., which they had in mind in the event appellants should, in fact, further attempt to prosecute the suit in Hardin county, and that they at all times, after such long delay and apparent abandonment on the part of appellants, thought and considered that the case ought to be and would be dismissed when it should reach the docket of the district court of Hardin county.

This statement of the respective contentions of the parties, though very brief in comparison to their voluminous pleadings, is, we think, sufficient to indicate and make clear the points that we shall hereinafter discuss. But it might be well to add, further, that in the motion to reinstate, filed by appellants, they showed that the witness, Taylor, who was specifically claimed by appellees to be one of their most important and indispensable witnesses, had been located since the motion to dismiss had been granted, and that this witness, at the time of the motion to reinstate, was living at Graybull, Wyo., and an affidavit to this effect, made by W. E. Watson, a brother-in-law of Taylor, was attached to the motion to reinstate, and, in the motion to reinstate, appellants further offered to agree that if the same should be granted, appellants were willing to delay the trial of the cause until the deposition of the witness Taylor might be taken by appellees, and if such deposition could not be had in time for the term of the court then pending, the case might be continued until the deposition of Taylor could be had. It was further also alleged in the motion to reinstate that Mr. Chew, who was the only attorney in the case for appellants, up to the time the order of transfer to Hardin county was made, was an important witness in behalf of appellants, against appellees' motion to dismiss, and that Mr. Chew was unavoidably absent when the motion to dismiss was heard, he being engaged in other matters at that time, and it was fully stated in the motion to reinstate, under oath, what his testimony would have been had he been present on the hearing of the motion to dismiss, etc.

As stated in the beginning of this opinion, it occurs to this court that the sole and controlling question now before us is whether or not this court can say that the trial court abused its discretion in dismissing this cause, and refusing to reinstate the same. The first term of the district court of Hardin county convening after the order of transfer from Harris county was made, began on September 28, 1914, and, as hereinbefore shown, no transfer and filing of this cause in Hardin county district court had been made up to the adjournment of that term, and the next or second term of the district court of Hardin county convened in the latter part of March, 1915, and no transfer of this cause to the district court of Hardin county had, up to that time, been made; and the third term of the district court convening after the transfer from Harris county was ordered, was in September, 1915, and up to the convening of this term, no transfer of the cause from Harris county had been made, but during the latter part of this third term of the district court of Hardin county, there was filed in the district court of Hardin county the original citation in this cause, together with the order of transfer made by the district court of Harris county, accompanied by the receipt for the papers in the cause, which had been executed by attorneys for appellants to the clerk of the district court of Harris county. Whether or not any action was taken by either of the parties during the September term of the Hardin county district court, at which the cause was filed, is not reflected by the record, but, as stated before, when the fourth term of the district court of Hardin county convened, in March, 1916, appellees promptly presented their motion to dismiss this cause from the docket, for the reasons set up in the motion, as hereinbefore substantially stated.

When the motion to dismiss was called to the attention of the trial court, it was agreed, as hereinbefore shown, that the hearing thereof should be taken up on April 4th thereafter, and it was stated at the time of this setting, by Mr. Blankenbecker, who then appeared for the first time as counsel for appellants, that he, Mr. Blankenbecker, was not as conversant with the history, etc., of the suit as was Mr. Chew, and that for that reason he was not prepared to take up the motion to dismiss just at the time, but by setting the motion off until April 5, 1916, Mr. Chew would be able to be present to handle the matter, and when the day arrived for hearing the motion, no attorney at all appeared for appellants, after this setting by agreement, and the court proceeded, as is shown by the record in the case, to hear the motion of appellees to dismiss, taking into consideration on the hearing the sworn answer filed thereto by appellants, and after due consideration of the entire matter was of the opinion and held that the case should be dismissed, as prayed.

It will be seen from what has been said above that there is no dispute as to the time

that elapsed between the order of transfer of this cause was made by the district court of Hardin county and its actual transfer and filing in the district court of Hardin county, but the whole contention of appellants is to the effect that such time elapsing, unless it was due to the fault of appellants in not giving reasonable and proper attention to the transfer, did not justify or authorize the district court of Hardin county·to dismiss this cause when they appeared and offered to prosecute the same, and that, as they contend, the record shows that they used reasonable and proper diligence in the prosecution of this cause.

[1] This court, after a thorough examination of the record before us, has reached the conclusion that we would not be justified in holding that the trial court abused its discretion in dismissing this cause, or in refusing to reinstate the same, after dismissal. There is no question, and appellants admit, that the motion to dismiss was addressed, and properly so, to the sound discretion of the district court of Hardin county, but they contend that that discretion was abused.

[2] Appellants, in their brief, take the position, by way of argument, at least, that it was as much the duty of appellees, after the order of transfer was made in Harris county, to see that the clerk of that court did his duty by transferring the record to Hardin county, as it was the duty of appellants themselves, for appellants argue that appellees were the ones who secured such order of transfer by interposing the plea of privilege of F. L. Thompson to be sued in Hardin county, and that, such being true, appellees' counsel should have been as diligent, and used as much care as ought to have been expected of appellants' counsel in seeing that the transfer was timely and properly made. To this contention we cannot agree, because we think that it was the duty of appellants' counsel to look after the transfer of this record from Harris to Hardin county, and to see that it was timely and seasonably done, because they represented the plaintiffs in the case, who were the actors in this controversy, and the mere fact that appellees availed themselves of their privilege to be sued in Hardin county, a statutory right, would not carry with it any obligation on their part to see that the transfer was, in fact, made, and that the suit was thereafter prosecuted in Hardin county. We think that such contention on the part of appellants is without any respectable authority to support it.

[3] Appellants also contend, by way of argument in their brief, that the whole delay in the prosecution of this cause in the district court of Hardin county ought to be attributable, not to themselves or their counsel, but to the failure on the part of the district clerk of Harris county to do his duty in promptly transferring the record in this case after he was ordered by the district court there to do so, and they contend that there

was no duty at all resting upon appellants or their attorneys to look after the discharge of this duty on the part of the clerk of Harris county, or to even see that he had done his duty in transferring this record. With this contention we cannot agree, notwithstanding we admit that it was the duty of the clerk of the district court of Harris county to see that the transfer of this record to Hardin county was duly and seasonably made, because our statute provides that when a plea of privilege is sustained by the trial judge, the cause shall be transferred to the county of the domicile of the defendant making the plea, and that the clerk of the court shall promptly, etc., transfer the record to the proper clerk of the proper county, etc., but we do not concede that no further duty rested upon appellants or their counsel in seeing that the record was duly and seasonably and properly transferred, but think, on the contrary, that it was their duty to see that the clerk did duly and seasonably make this transfer, and that it was appellants' clear legal right to have him to do so, and this right could have been enforced by appellants. Now, appellants admit that after the order of transfer was made in Harris county, they paid little attention to the matter until the district court in Hardin county, to which the transfer was ordered, was about to convene, which was nearly, or approximately, three months after the order of transfer, and the only attention paid at that time by appellants' counsel was to inquire of the clerk of Harris county what had been done about the matter, and he received "little information from the clerk." It does not appear from the record what this little information was, but subsequently, appellants contend, they learned from the clerk that the papers had been misplaced, and they inquired a time or two about this matter, but were informed that the papers had not yet been found, and the matter rocked along, and, appellants' counsel say, and plead under oath, notwithstanding they had been informed that the papers were lost, yet they thought and believed that the record had been duly transferred to the district court of Hardin county, and acted upon that assumption for this great length of time, and, as a matter of fact, the record fails to disclose that appellants, or their counsel, ever made the slightest inquiry of the district clerk of Hardin county as to whether the transfer of the record had reached that court, not even as much as writing the clerk of that court a letter concerning this matter. We think that they had no right to assume, and rely upon the assumption, without inquiry, that the record had been filed in the district court of Hardin county, especially after they had been informed by the clerk of Harris county that the papers had been lost or misplaced, but we think that when such information reached appellants' counsel, they should have instituted and prosecuted a diligent inquiry

about the matter, and, before assuming, under these circumstances, that the case had been transferred, and relying upon such assumption, they should have inquired of the district clerk of Hardin county about the matter. They seem to rest their contention largely upon the ground that, at all events, the papers were misplaced in the district clerk's office at Houston, and that they could not have made a transfer of the record to Hardin county. This contention is met by the fact that they did, in fact, long afterwards, have the clerk of Harris county to send over the original citation in the case, and a certified copy of the district court's order, at Houston, transferring the cause, and all of this could have been done by the time the first term of the Hardin county district court convened, after the order transferring the cause was made, it seems to us, or, at least, by the time the second term of the district court of Hardin county convened, and, if not, then, at least, by the time the third term of the district court of Hardin county convened, yet it was not done at all, and appellants' counsel went on assuming that the case, all that time, was duly pending in the district court of Hardin county, according to their answer opposing the motion to dismiss.

[4] Now appellants further contend, not only by way of argument, but in their pleadings, that counsel for appellees "acquiesced in and winked at" the failure of the appellants to sooner transfer or have transferred this cause to Hardin county, and while we do not know just exactly what appellants mean by this, we can say that, in so far as this record discloses, there is not a thing to indicate that appellees' counsel connived in any way at the failure to have this record duly transferred to Hardin county, nor is there anything to indicate that they acquiesced in appellants' failure to do so. It appears from the record that appellees' counsel, Mr. Chas. D. Smith, while in Houston on one or two occasions, during the time between the order of transfer and the actual transfer of the record to Hardin county, called at the office of the district clerk of Harris county, and inquired of the clerk whether the cause had yet been transferred to Hardin county, and inquired of the clerk whether appellants intended or were insisting on having the cause transferred to Hardin county, and appellants lay some stress upon this fact, and contend that appellants' counsel thereby conceded that the cause might still be transferred and prosecuted in Hardin county, and that appellees, perhaps, waived any right to object to its further prosecution, after it was transferred. We are unable to see anything in this contention of appellants, and think that there can be no estoppel or waiver arising out of the conduct of appellees' counsel merely because he made such inquiry of the district clerk of Harris county, for, in our opinion, appellees' counsel had a perfect right to make such inquiry and to keep himself informed of the status of the cause, as best he could, in the discharge of his duties to his clients, and we fail to see how such conduct on the part of appellees' counsel could be construed into a connivance on his part in the failure and want of diligence on the part of appellants to look after and have this cause transferred, or that such conduct on appellees' counsel's part showed any acquiescence in the failure of appellants to do so.

With reference to the contention of appellants concerning what was said between Mr. Vinson and appellants' counsel, Mr. Chew, above mentioned, we would say, in passing, that it was emphatically denied by appellees' counsel on the trial below that Mr. Vinson was associated in any way as attorney for appellees in this case, or that he was in any manner authorized to make any agreement with appellants' counsel touching this case, if he did make any such agreement, or have any understanding, and all these matters were evidently passed upon and considered by the trial judge in reaching the conclusion he did, disposing of this cause.

Appellants filed in the court below affidavits of several persons, which were attached to the sworn pleadings, and which were, presumably, duly considered by the trial court, among which was the affidavit of the trial judge of the district court of Harris county, in which he, in substance, stated that at the time the plea of privilege was sustained, appellants gave notice of appeal from the ruling of that court, and that he, the trial judge, saw nothing to indicate that appellants at that time intended to abandon the further prosecution of said cause, but, on the contrary, he felt convinced that it was then the intention of appellants to further prosecute the cause, and also that appellees' counsel, Mr. Smith, was present, and saw and heard just what the trial judge states took place. In this connection, it might be well to say that notice of appeal was, in fact, given by appellants at the time the trial judge in Houston sustained the plea of privilege, but it is also conceded that no appeal was ever prosecuted, but just when appellants decided to not prosecute the appeal, of which they gave notice, is not shown by the record. There was also an affidavit of the deputy district clerk of the Houston office, which stated, in substance, that Mr. Chew, as attorney for appellants, called at the office on perhaps more than one occasion, after the plea of privilege had been sustained, and made some inquiry about what had been done in the way of transferring the cause, and made some inquiry about the papers, which had become lost or misplaced, and this deputy further stated that while appellants had never paid the costs that had accrued in the court at Houston, still the clerk there did not refuse to transfer the case merely because such costs were not paid. But he further stated, and there is no con-

tention to the contrary, that appellants' counsel never at any time requested the clerk's office there to transfer what papers were to be found in the Houston office, or to send to Hardin county a certified copy of the order at Houston transferring the cause, or anything else, and, taking the record as a whole, it is manifest to our minds that appellants and their counsel gave very slight attention to the matter of having this cause duly and seasonably transferred, as was ordered.

It is also contended, by way of argument, that appellees ought to have anticipated that their witnesses might become scattered, and that they should, perhaps, have taken the depositions of such witnesses, and had them available at the trial in Hardin county, when called upon, but in answer to this we might say that, after the order of transfer was made in the district court of Harris county, and before the filing of this cause in the district court of Hardin county, the status of this cause was such that appellees probably were not in an attitude where they could take the depositions of any of their witnesses. We hardly think that after the order was duly made by the district court of Harris county, appellees could have properly applied to the clerk of that court for a commission to take such depositions, for the reason that the cause was no longer regularly pending in that court, but had been ordered transferred for trial to another, and the clerk of the district court of Hardin county was probably not authorized to issue a commission to take such depositions, for the reason that no such cause was pending upon the docket of that court, and appellees were "up in the air," so to speak, while this cause was suspended between these two district courts. Stringer v. Jacobs, 9 Ark. 497, 50 Am. Dec. 221; Hickman v. Swaine, 106 Tex. 431, 167 S. W. 209; Slayden v. Robinson, 143 S. W. 295; Wolf v. Sahm, 55 Tex. Civ. App. 564, 120 S. W. 1114.

It is strongly urged by appellants that the trial court abused its discretion in refusing to reinstate this cause, for the reason that, as shown by their sworn motion to reinstate, appellees' witness Taylor, who, according to appellees' motion to dismiss, was its main and important witness, had been located in Wyoming, and his depositions might be taken by appellees, and since appellants were willing to postpone the trial until such depositions could be taken, or to even continue the case for that purpose, the court should not have refused to reinstate the case. It will be borne in mind that the witness Taylor was not the only witness whose testimony appellees desired, according to their pleadings, but their contention was that all of their witnesses had scattered, and were inaccessible, etc., and while other witnesses were not specifically named, this sworn contention by way of motion was still before the court, and was a matter to be considered by the court

in passing upon the motion to dismiss, as well as to reinstate.

[5] But, even as to the witness Taylor, it cannot be said that the testimony of the witness Taylor in the form of a deposition would be just as available, and worth as much to appellees as would such testimony if given in person by Taylor before the court or jury trying the cause, and we know that most litigants, or their counsel, prefer to have their witnesses present in person, when this can be reasonably done, and we assume, also, that trial courts and juries, in passing upon the credibility of witnesses, which is their province, might frequently prefer to see such witnesses on the stand in person, and observe their deportment, etc., and therefore we cannot hold that appellees were deprived of no advantage or benefit that they might have had by having the witness Taylor present in court to testify. According to appellees' motion to dismiss, the testimony of this witness Taylor was very material and indispensable to their defense of this cause, and they claimed that the clear lack of diligence and attention on the part of appellants in having this case promptly and seasonably transferred to Hardin county had deprived them of that advantage and benefit, and the trial judge very probably agreed with appellees in this contention, and we are not prepared to say that the trial court took an incorrect view of this matter.

[6] It would serve no useful purpose to here discuss the rule at common law relating to the discontinuance of a cause, because that rule has long since been abrogated, in this state. The rule at common law, briefly stated, was, that if a plaintiff leave a "chasm" in the proceedings or prosecution of his suit, such as allowing a term of court in which the case was not disposed of, to adjourn without invoking the action of the court by having a formal order entered of record, continuing the cause, the same was, by operation of law, discontinued, and the defendant was no longer required to attend.

[7] The courts of this state, however, at an early day, declined to follow this strict and rigid rule of the common law, and refused to fix a definite time limit beyond which a plaintiff might not delay in having a cause transferred and entered on the docket of the court to which it was removed, but seem to have laid down the rule that it was incumbent upon the plaintiff to cause the case and the papers therein to be transferred as early as was conveniently practicable, or within a reasonable time, after the venue was changed, leaving it within the sound discretion of the courts to exercise their equitable powers to determine, in the circumstances of each case, whether the delay should be excused and the discontinuance obviated. This more lenient rule was adopted in our state, because, perhaps, of the unsettled state of affairs existing in our govern-

ment and courts at an early day in Texas, when transportation facilities were most meager, and means of communication by mail, or otherwise, were most limited, but it was certainly not intended by our courts to lay down a rule that would permit a party, after instituting a prosecution of this character, and after having the venue changed to another court, to rest upon his oars indefinitely, or for an unreasonable length of time, and with little attention to the matter, and then permit such a litigant, over protest, to again attempt active prosecution of such litigation, when perhaps to do so would throw his adversary at a great inconvenience and disadvantage, unless such delay and failure to act on the part of the moving party should be satisfactorily explained, and we think it highly proper and necessary that the trial courts should be allowed some discretion in matters of this kind, notwithstanding the abrogation of the rule, as it existed at common law, for it would be sometimes very unreasonable and perhaps very detrimental to defendants if a party should have the absolute right to recommence an active prosecution of a cause, which, from the facts and circumstances heard by the trial judge, it was reasonable that the defendant had considered had been abandoned by the plaintiff.

[8, 9] It would not do to lay down an iron-clad rule, to the effect that, merely because the plaintiff in such a case might say to the trial judge that it was never his intention to discontinue or abandon the prosecution of his cause, the trial judge should be bound to accept such statement, and proceed at the pleasure of the plaintiff. Each such case, when the question arises, should depend upon the circumstances and facts peculiar to that case, and the trial judge should be vested with a sound judicial discretion in disposing of the same; and, unless it should appear on appeal that that discretion was abused, it is the duty of the court on appeal to sustain the trial court's action. We might here call attention to the following authorities, which bear, more or less, upon the assignment we are discussing: Article 5685, Vernon's Sayles' 1914; arts. 1832 and 1833, Vernon's Sayles' 1914; Gillespie v. Redmond, 13 Tex. 9; Ponton v. Bellows, 13 Tex. 254; Flanagan v. Smith, 21 Tex. 493; San Antonio v. Jones, 28 Tex. 19; Cotton v. Patterson, 59 S. W. 568; Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645; Thompson v. Rice, 49 Tex. 769; Wilson v. Adams, 50 Tex. 5; Cruz v. State, 76 Tex. Cr. R. 32, 172 S. W. 235.

We think that in some respects a change of venue occasioned by the sustaining of a plea of privilege is analogous to an appeal; and, as showing that some duty rested upon appellants in seeing that the clerk of the district court of Harris county duly and seasonably transferred the record in this cause, in obedience to the order of transfer, we call attention to the following authorities: Cari-ker v. Rill, 140 S. W. 845; Luter v. Ihnken, 143 S. W. 675; Wells v. Driskell, 131 S. W. 87; Ponton v. Bellows, 13 Tex. 254, supra.

In the case of Flanagan v. Smith, supra, the Supreme Court of this state, speaking through Judge Roberts, after discussing Gillespie v. Redmond, supra, in which the rule above referred to was at an early day adopted in this state, said:

"Whatever may be the extent of relaxation determined on in ultimately fixing a rule, it may be safely concluded that a failure to take action, by continuance or otherwise, in a cause in the justice's court for four years, in which time the cause of action would be barred by limitations, should be held to have released the defendant from further attention or defense to the cause."

And further:

"Otherwise the plaintiff might in some cases be interested in thus delaying the cause, and by allowing it to slumber under an apparent abandonment of the suit, until the evidence of defendant might be lost, gain an undue advantage. But apart from that consideration, every one who is summoned into court to answer a complaint has a right to expect that a reasonable diligence shall be used in prosecuting the proceeding against him. If the court refused or failed to act, the plaintiff has his remedy. When there has been a failure to proceed with the case until defendant may reasonably have concluded that the suit was abandoned, then of course the defendant should not be held bound further to appear and defend it."

In this case, it is true, the delay to prosecute in the justice's court was something over four years, but the reason for the rule that we are discussing is clearly laid down by Judge Roberts.

The case of Ponton v. Bellows, supra, was a case removed by order of the district court of Gonzales county to Lavaca county in October, 1851, and was not docketed in Lavaca county until the spring term, 1853, just a little more delay than appears in this case. The Supreme Court of this state, speaking through Judge Wheeler, said:

"In the recent case of Gillespie v. Redmond, it was held that the omission to place the case on the docket of the court to which it was transferred, at the term next succeeding the change of venue, would not necessarily operate a discontinuance. That consequence might be obviated by satisfactorily accounting for the delay. It certainly would require very cogent reasons satisfactorily to explain the delay which appears in this case. How it was explained does not appear; there being no statement of facts. But we must presume in support of the judgment that a sufficient explanation was given, if such apparent laches was susceptible of explanation. * * * It was incumbent on the plaintiff, or party prosecuting the suit (or appeal, as in this case) to cause the case to be transferred as early as conveniently practicable, or within a reasonable time."

In the case of Wilson v. Adams, supra, decided in 1878, in respect to the duty of a plaintiff, or appellant on appeal, to prosecute his writ of error, our Supreme Court said:

"The writ of error was unquestionably returnable to the ensuing term of the court after the petition and bond were filed, unless, after due diligence, service could not be had in time to do so. The plaintiff must see to it that due diligence is used to perfect service of the writ

and to prosecute his writ of error. If he suffer more than a year to elapse in taking out alias citation, it warrants the presumption that he declines to prosecute his writ of error, and authorizes its dismissal if he afterwards seeks to prosecute it. * * * Even a delay of 17 days in issuing an alias citation after a return 'not found' on the original, was severely commented upon by this court in the case of Wheeler v. State, 8 Tex. 228, and in that of Roberts v. Sollibellus, 10 Tex. 352, when a term was lost for want of diligence, the writ was dismissed."

In the case of Thompson v. Rice, supra, on the same question, the Supreme Court said:

"The statute required the clerk to issue the citation upon the filing of the petition and bond, and as the writ is made returnable in 30 days, the plaintiffs in error had only to make inquiry at the end of that time to ascertain that not only was there no service, but that no writ had issued. Whatever might be the rule where less than thirty days remained for service, in order to be in time for the assignment at the next term of this court, there can be no question that the failure for 64 days to issue citation was negligence, both in the clerk and in the plaintiffs in error; and as that negligence has led to the loss of a term of court, the motion of defendants in error to dismiss the writ must, under former decisions, be sustained."

We think it would serve no useful purpose to further discuss the rule governing matters like this, as we understand it in this state, and since we do not feel authorized to say that the trial court abused its discretion in dismissing or in refusing to reinstate this cause, under the facts and circumstances of this case, we think that this assignment should be overruled; and it is so ordered.

The second assignment of error is:

"The district court erred and clearly abused its discretion in refusing to set aside the order granting the motion for dismissal and to reinstate the cause, in view of the showing made in plaintiffs' amended motion to reinstate, particularly that there had been no abandonment of the cause, and no such lack of diligence in the prosecution of it as would justify a dismissal"

—and the proposition thereunder is:

"It was error for the court to refuse to reinstate the cause on motion of plaintiffs therefor, when the plaintiff conclusively establishes that there had been no abandonment thereof, and no such lack of diligence as would justify a dismissal."

We think that this assignment and proposition, if they had any support in fact, would be all right, but from what has been above said it is manifest that the trial court concluded that the evidence introduced before him did not conclusively establish that there had been no abandonment of this cause by appellants, and did not establish that there had been no such lack of diligence as would justify a dismissal; and since what we have said in disposing of the first assignment is applicable to this one, we overrule this assignment also, without further discussion.

[10] The third assignment is:

"The district court erred and clearly abused its discretion in failing and refusing to hear and consider the testimony of the witness E. T. Chew, offered by plaintiffs on the hearing of the plaintiffs' amended motion to reinstate this cause, as shown by plaintiffs' bill of exception No. 1, and thereby deprived the plaintiffs of a valuable and important right, the facts to which said witness would have testified and offered to testify to showing clearly that there had been no abandonment of this cause, and no laches justifying the court's refusal to reinstate."

The proposition under this assignment is:

"It was error for the court to refuse to hear and consider the testimony of the witness E. T. Chew; said witness being alone cognizant of plaintiffs' side of the case, and being present in court and offering to testify to important and relative facts, with the official stenographer present to take his testimony. This is especially true, since there was no independent affidavit of the witness, and instead of filing his affidavit, the witness offered his highly material testimony in court; there being no understanding whatever that the motion was to be heard on affidavits alone."

Appellants' bill of exception No. 1 mentioned in the above assignment is quite lengthy, and covers completely 11 pages of the transcript, and therefore to set it out in full in this opinion would be too much to expect of this court. We shall therefore state merely the substance of such portions thereof as are thought to be material to a disposition of this assignment. The bill recites that after the pleadings had been read and affidavits introduced, appellants offered Mr. Chew as a witness, it being stated at the time that he was offered as a witness for the purpose of contradicting the contention that the cause had been abandoned, and to show that he had used due diligence to see that the same was transferred, and it being further stated that he was sole attorney for plaintiffs during the time in question, cognizant and conversant with all the facts upon which appellees' motion to dismiss was made. Thereupon appellees objected, the grounds of their objection not being stated. It appears that the regular court stenographer was present at the time this testimony was tendered. The court refused to permit the witness to testify verbally, to which action of the court the appellants duly excepted. The bill further recites that if the witness had been permitted to testify, he would have stated, under oath, that he has been a practicing attorney in Houston for the last 16 years, being a graduate from the Law Department of the University of Texas; that he filed the suit for plaintiffs June 10, 1913; that after the plea of privilege was filed in Harris county, Mr. Chas. D. Smith, attorney for appellees, took up with him the matter of continuing the plea until Mr. Smith found it convenient to try same; that on October 1, 1913, witness saw that an order was entered upon the docket of the Harris county court, continuing said plea of privilege without prejudice; that again on November 7, 1913, at a subsequent term of the court, witness saw for Mr. Smith that said plea of privilege was continued as before; that again on January 30, 1914, at the next term of the court, witness again saw for Mr. Smith that said plea of privilege was con-

tinued without prejudice; that Mr. Smith depended upon witness to have said orders made, and expected and relied upon witness doing so. This bill goes on further to recite that said witness Chew, as attorney for appellants, while the cause was pending in Harris county, showed much courtesy to Mr. Smith, counsel for appellees, and the bill further shows that Mr. Chew would have testified that in view of such courtesies extended to Mr. Smith, he thought that Mr. Smith would extend a like courtesy, etc., and that witness was looking to Mr. Smith to keep him informed as to the setting and progress of the cause in Hardin county. The bill also sets out the two letters alleged to have been written by Mr. Chew to Mr. Smith, as hereinbefore copied in this opinion, and further sets out that witness believed that the cause had, in fact, been duly and regularly transferred to the district court of Hardin county, and that no action would be taken by counsel for appellees, without proper notice to Mr. Chew, etc., and the bill goes on to recite a great many things that Mr. Chew would have sworn to in person had he been permitted to testify verbally, and which were fully stated in the appellants' answer to the motion to dismiss, all of which was sworn to by the witness Chew, and was before the court and treated as the affidavit of Mr. Chew by the trial court. The bill further shows that Mr. Chew would have sworn that he was unable to be present as counsel in the case at the time the motion to dismiss was submitted and granted, for the reason that he was engaged with other matters, which at that time demanded his attention.

This is but a very brief statement of the contents of this bill of exception, but we think it suffices for the purposes of the disposition here. It will be at once seen that nearly every thing that Mr. Chew would have testified to verbally, when he was tendered as a witness, was fully set out in his answer to appellees' motion to dismiss, and was verified by him, and was also fully again set out in the motion to reinstate, which was verified by him. Now the court qualifies or explains the bill of exception, or rather his reason for declining to hear the oral testimony of Mr. Chew on the motion to reinstate in this way: The motion was presented when the court was just in the act of adjourning for the term, and the minutes were prepared and ready for signing, and the trial judge was preparing to leave and there was not sufficient time to go into the reason again, in detail, for granting the motion, as claimed by appellants. The court further states in his qualification to the bill that nearly everything that Mr. Chew proposed to testify to was fully stated in his answer to appellees' motion to dismiss, and all of which was sworn to by

Mr. Chew, and the court thought that there would be no reason for again permitting Mr. Chew to repeat verbally what he had sworn to in the answer to the motion, and in the motion to reinstate.

We have looked into this bill carefully, and we have concluded that the court committed no error in refusing to hear this oral testimony on the part of Mr. Chew that would have in the least prejudiced appellants, and the assignment is overruled.

Finding no error in the judgment of the trial court, for which we would feel authorized to reverse the judgment, the same will be affirmed; and it is so ordered.