## FRED A. REEF V. MILLS NOVELTY COMPANY.

No. 6491.  Decided January 8, 1936.
(89 S. W., 2d Series, 210.)

*King S. Williamson* and *J. H. Synnott*, both of Dallas, for plaintiff in error.

It being true that the earned and open account being a species of property and Moseley having a present interest in it, it was assignable without the consent of the debtor or the company.  J. R. Watkins Co. v. McMullen, 6 S. W. (2d) 823; Henderson Tire and Rubber Co. v. Roberts, 12 S. W. (2d) 154; Potomac Fire Ins. Co. v. State, 18 S. W. (2d) 935.

*Seay, Seay, Malone & Lipscomb,* and *Tarlton Stafford,* all of Dallas, for defendant in error.

Since Moseley's commissions were earned under a written contract with the Mills Novelty Company containing a provision that Moseley could not at any time, without the consent of the company, assign his account, the company was within its legal rights in refusing to honor the assignment.  And in permitting the account to accrue and be paid to Moseley without any protest on the part of plaintiff, he waived any rights that he might possibly have had to collect same.  Perisian Live

Dyers & Cleaners v. Springfield, 275 S. W., 1098; Stanley v. Sheffield Land, Iron & Coal Co., 83 Ala., 261, 4 So., 34; City of Omaha v. Standard Oil Co., 55 Neb., 337, 75 N. W., 859.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by Fred A. Reef against the Mills Novelty Company, on a claim alleged to have been assigned to him by B. B. Moseley. The case was tried before the court without a jury, resulting in a judgment in favor of the Novelty Company. The judgment was affirmed by the Court of Civil Appeals. 57 S. W. (2d) 242.

The material facts are substantially as follows:

During the year 1926, and for sometime afterwards, Moseley was in the employ of the Novelty Company as salesman of products of the company, on a commission basis. His employment contract was in writing. For the most part, the products were sold to customers on the installment plan. Moseley's commission account was to mature and become payable when all installments were collected or otherwise adjusted as provided in the employment contract. On April 1, 1927, Moseley assigned his commission account to Reef. At that time the account, according to the books of the Novelty Company, had a credit balance in the sum of approximately $1,600 for accrued and unaccrued commissions. This credit balance was subject to adjustment and deductions, depending on amount collected from customers on unmatured installments. Reef, at the time, notified the company of the assignment of the account to him by Moseley. The company promptly refused to accept the assignment and refused to consent to it. Later on, the account was settled, all adjustments and deductions made, and the actual balance due under the account was found to be $1,401.29. The company paid this sum to Moseley. Afterwards Reef brought this suit to recover from the company said sum as the amount due him on the account which Moseley had assigned to him. The company defended on the ground that, under the terms of the employment contract with Moseley, no assignment of the account by the latter was to be binding on the company unless the company consented to the assignment. The provision of the employment contract upon which this defense is founded reads as follows:

"No assignment of your account, or any portion of it, at any time, to be binding upon this company unless such as-

signment is accepted and acknowledged by the company's treasurer."

■ The precise question we are called on to decide is whether or not the parties to a contract may, by agreement, render unassignable a money claim arising under the contract. Of course the parties cannot, by such an agreement, remove the debt beyond the reach of our garnishment statutes or any other applicable statute; but no reason occurs for denying to the parties the right, so long as no statute is infringed, to bind themselves to each other as they see fit, with respect to obligations imposed by the contract. In such a case a money claim growing out of the contract, which comes to the hands of a third person, remains subject to the terms of the contract. When the debtor has the contract right to ignore a voluntary transfer of the claim, as in the instant case, no effective transfer can be made without his consent. His contract right must be respected by third persons. In other jurisdictions where the precise question has arisen, the contract right of the debtor in this respect has been enforced, and no decision to the contrary has been found. Tabler v. Sheffield Land Etc. Co., 79 Ala., 377, 58 Am. Rep., 593; Barringer v. Bes Line Const. Co., 23 Okla., 131, 99 Pac., 775, 21 L. R. A. (N. S.) 597; 2 R. C. L., p. 604. The argument that public policy forbids such a contract right is without support in reason or authority. The right concerns the performance of the debtor's obligation to pay. The public is in nowise affected.

It has been suggested that Articles 569 and 570 of the statutes, particularly the first mentioned, operate to exclude, by implication, the right of contract against the assignability of a chose in action. These statutes read as follows:

Art. 569. "The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another."

Art. 570. "The assignee of any instrument mentioned in the preceding article may sue thereon in his own name. He shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant. In order to hold the assignor, drawer or endorser as surety for the payment of the instrument, the assignee shall use due diligence to collect the same. Such diligence can only be waived in writing."

■ It must not be forgotten that at common law a chose in

action was unassignable. In 2 Ruling Case Law, page 595, it is said:

"Except in cases within the law merchant, it was the established principle of the common law, that a chose in action, which is defined as a personal right not reduced into possession, but recoverable by suit at law, could not be assigned, and that no man could purchase another's right to a suit either in whole or in part," The above statutes, in substance, were originally enacted January 25, 1840. (2 Gammel's Laws, p. 318.) The common law had been made the rule of decision only five days before. (2 Gammel's Laws, p. 177.) It seems plain then that the purpose of the provisions now contained in Article 569 was simply to change the common law so as to permit the transfer of any claim or right which in nature is capable of being transferred. (See Cleveland v. Heidenheimer, 92 Texas, 108, 46 S. W., 30.) The terms of the statute are merely permissive and were not intended to interfere with the right of contract in regard to the transfer of any claim. That this is true was distinctly recognized in Lakeview Land Co. v. San Antonio Traction Co., 95 Texas, 252, 66 S. W., 766. In that case, the court, after quoting this statute, went on to say: "The contract sued upon is a 'written instrument not negotiable by the law merchant' and was therefore within the terms of the law. This statute is very general, but proper construction would limit it so as not to include the classes of contracts which are by their terms, or in their nature, not assignable,—as for services requiring professional skill and the like."

The provisions of Article 570 have reference to one who holds under an effective assignment.

The judgment of the Court of Civil Appeals and that of the trial court are affirmed.

Opinion adopted by the Supreme Court January 8, 1936.