SAN ANTONIO & A. P. RY. CO. et al. v.
D. M. PICTON & CO. et al.
No. 10191.

Court of Civil Appeals of Texas.   San
Antonio.
Dec. 1, 1937.

Rehearing Denied Jan. 5, 1938.

John C. North, of Corpus Christi, and Baker, Botts, Andrews & Wharton and John T. Maginnis, all of Houston, for appellant.

Frank A. Leffingwell, Ralph W. Currie, Dick Dixon, and Leffingwell, Currie & Davis, all of Dallas, for appellees.

MURRAY, Justice.

This suit was instituted in the district court of Nueces county on December 5, 1922, in the name of D. M. Picton & Company, a private corporation, against the San Antonio & Aransas Pass Railway Company, to recover on certain shipments of freight, consisting of 1,460 carloads of rock shipped from Beckman, Tex., to Corpus Christi, Tex., between October 27, 1920, and August 6, 1921, alleging that D. M. Picton & Company was required to pay excess freight charges in the sum of $8,490.33. This rock was to be used by D. M. Picton & Company in constructing a breakwater for the city of Corpus Christi. The petition was signed by James M. Taylor, as attorney for plaintiff. James M. Taylor was at the time city attorney of the city of Corpus Christi and also engaged in the private practice of law.

On May 2, 1924, a first amended petition was filed by the same plaintiff against the same defendant. On August 14, 1934, a second amended original petition was filed. This petition named the same plaintiff and defendant, except the Texas & New Orleans Railroad Company was added as a party defendant. This petition was signed by attorneys other than James M. Taylor. On November 9, 1936, a third amended petition was filed, in which petition D. M. Picton & Company was described as being a partnership composed of D. M. Picton, A. N. Peckham, and R. P. Clark, and the city of Corpus Christi was named as the real party at interest. It was alleged that on October 5, 1921, D. M. Picton & Company assigned to the city of Corpus Christi any claim they had, arising out of any illegal charges collected by the San Antonio & Aransas Pass Railway Company, and, further, that such assignment specifically authorized the city of Corpus Christi to make, claim, and prosecute in plaintiff's name an action for the refund of such illegal and excessive charges and that the original suit was filed for the use and benefit of the city of Corpus Christi. This petition further alleges that D. M. Picton & Company was a corporation when the contract with the city was made, but that it was dissolved on December 27, 1920, during the time the breakwater was being constructed, and that thereafter the business was carried on as a partnership.

D. M. Picton testified that he was president of the corporation of D. M. Picton & Company until the dissolution thereof, in the latter part of 1920, after which time he was the senior member of the partnership of D. M. Picton & Company, composed of himself, A. N. Peckham, and R. P. Clark. He further testified as follows: "It is a fact that the city of Corpus Christi repaid us full for all freight charged and paid by us, including the increased freight rate sued for in this suit, on all of the rock used in the construction of the breakwater, and we have no pecuniary interest in this suit * * * Neither myself or A. N. Peckham or R. P. Clark, or D. M. Picton & Company, Incorporated, ever at any time had or claimed any amount was due us, or either of us, by reason of this increased freight rate. * * * It is a fact that neither A. N. Peckham, R. P. Clark or D. M. Picton & Company, Incorporated, ever at any time employed an attorney to bring this suit, or any other suit by reason of the increased freight rate * * * never did anything except help City of Corpus Christi and turned over all our records to them. * * * No part of any judgment recovered in this case would be due us, and we have never in any manner obligated ourselves to pay any Court costs, or attorney's fees, or other expenses, in connection with this suit, and any judgment, or sum of money that might be recovered, or paid in this suit, would be due and payable to the City of Corpus Christi."

There is other testimony in the record tending to establish the fact that this claim belonged to the city of Corpus Christi and that the suit was instituted from the beginning for the benefit of the city, though this fact was not disclosed by any pleading in the case until the filing of the third amended original petition.

The trial was to a jury, but at the close of the testimony the trial court instructed

844

a verdict for plaintiffs in the sum of $13,-899.12 principal, with 6 per cent. interest from August 6, 1921, and upon such verdict the court rendered judgment for the city of Corpus Christi and D. M. Picton, A. N. Peckham, and R. P. Clark, for the use and benefit of the city of Corpus Christi in the sum of $13,899.12 principal, and $12,788.08 interest, making a total of $26,677.20. The judgment further provided that any payment be made to the city of Corpus Christi. From this judgment the railway companies have prosecuted this appeal.

■ Appellants contend that this cause of action is barred by the two and four year statutes of limitation, in that D. M. Picton & Company, Incorporated, is shown not to have any interest in this lawsuit and neither the individual partners nor the city of Corpus Christi were brought into this suit until some fourteen years after the original suit was filed and some sixteen years after the cause of action, if any, accrued. We overrule this contention. The filing of the suit in the name of D. M. Picton & Company, a corporation, suspended the running of limitations against this cause of action notwithstanding the fact that D. M. Picton & Company was in truth a partnership. The error in the description of the parties plaintiff was a mere misnomer, which was properly corrected by amendment before the suit went to trial. J. L. Jones & Co. v. Darden, Tex.Civ.App., 29 S.W.2d 479; Crabtree v. Markham Lumber Co., Tex.Civ.App., 238 S.W. 368; Ledbetter v. Moffett, Tex.Civ.App., 96 S.W.2d 990; Amarillo Commercial Co. v. Chicago, R. I. & G. Ry. Co., Tex. Civ.App., 140 S.W. 377; Missouri, K. & T. Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas.1914B, 134; Pope v. Kansas City, M. & O. Ry. Co., 109 Tex. 311, 207 S.W. 514; Rachford v. City of Port Neches, Tex.Civ.App., 46 S.W.2d 1057; Grayburg Oil Co. v. Corpus Christi Gas Co., Tex.Civ.App., 69 S.W. 2d 216.

The testimony shows that the city of Corpus Christi did in fact institute this suit in the name of its assignor, D. M. Picton & Company, even though the city's name did not appear until the filing of the third amended original petition. This fact is deducible from the testimony given by D. M. Picton, C. J. Howard, former city engineer of the city of Corpus Christi, and Frank A. Fellingwell, one of the attorneys for the city.

■ At common law choses in action were not assignable. Reef v. Mills Novelty Co., 126 Tex. 380, 89 S.W.2d 210. Therefore the only title transferred was the equitable title, or the beneficial interest, which would leave the assignor as the holder of the legal title. Article 569, R.C.S.1925, provides that both the legal and equitable title of a non negotiable written instrument may be assigned. 5 Tex.Jur. 9; Cleveland v. Heidenheimer, 92 Tex. 108, 46 S.W. 30; Reef v. Mills Novelty Co., supra. This suit, however, does not involve the transfer of a written instrument.

It is clear that the legal title to the chose in action herein involved remained in D. M. Picton & Company, and therefore this cause of action could be maintained by D. M. Picton & Company. In 5 Tex. Jur. 46, it is stated: "The mere fact that an assignor has transferred a chose does not prevent him from suing in his own name, if he has retained the legal title." In 5 Tex. Jur. 51, it is stated: "At common law an assignee may sue upon a chose in action in the name of his assignor and this is permitted in Texas. He may so prosecute the suit in all the courts including the appellate tribunals." See, also, Seiter v. Marschall, 105 Tex. 205, 147 S.W. 226.

It occurs to us that whether this suit was instituted by the city in the name of D. M. Picton & Company or by D. M. Picton & Company, it would nevertheless be sufficient to interrupt the running of the statutes of limitation.

Where the beneficial owner files a suit in the name of the assignor, it is not necessary that the petition show upon its face that it is brought for the benefit of another, if in truth the real beneficial owner instituted the suit in that form. Camden Fire Ins. Ass'n v. Eckel, Tex.Com.App., 14 S.W.2d 1020.

■■ Appellants next contend that this suit having been filed in 1922 was abandoned as a matter of law before 1936, and therefore the filing of the third amended petition in 1936 was the institution of a new cause of action, barred by the two and four year statutes of limitation. We overrule this contention. This question was not raised in the trial court. There was no motion to dismiss for want of prosecution. There was no allegation that the suit had not been prosecuted with due diligence. There was no showing as to who had caused the delay. The court was not called upon to go into these questions. Appellants ap-

peared at the trial, filed their answers and vigorously defended the suit; only after judgment had gone against them did they raise the question of abandonment. The fact that the proposition is numbered 3–a would indicate that it was thought of after the brief had been prepared. If the trial court had dismissed this cause for want of prosecution that action would not be reversed, unless it be shown that he abused his discretion in doing so, but where the trial court was not called upon to pass upon the question of abandonment, it is too late to raise the question on appeal. 15 Tex.Jur. p. 286; Hinkle v. Thompson, Tex. Civ.App., 195 S.W. 311; Loftus v. Beckmann, Tex.Com.App., 1 S.W.2d 268; Bond v. Kirby Lumber Co., Tex.Civ.App., 2 S.W. 2d 936; Higgins v. South Texas Development Co., Tex.Civ.App., 21 S.W.2d 540; Roemer v. Shackelford, Tex.Civ.App., 23 S.W. 87; Grayburg Oil Co. v. Corpus Christi Gas Co., Tex.Civ.App., 69 S.W.2d 216.

Appellants next contend that the correct legal rate on the shipments in question was 8½ cents per 100 pounds from October 27, 1920, to March 17, 1921, and 9 cents per 100 pounds from March 17, 1921 to August 6, 1921, as charged by the railway company, instead of 7½ cents per 100 pounds, as contended by appellee, and as found by the court.

The dispute over the proper rate arises in this way: From December 28, 1917, until February 29, 1920, the railroads were under the control of the federal government. A Director General of Railroads was appointed and the management of the railroads was under his immediate control. All shipments herein involved were shipped from Beckman, Tex., to Corpus Christi, Tex., a distance of 165.6 miles, shortly after the government had returned the control of the railroads to their respective owners, and between the dates heretofore stated. The following documents were offered in evidence by appellants as having a bearing upon the proper rates to be charged on the shipments herein involved, to wit:

"1. Railroad Commission of Texas, Commodity Tariff No. 9–B, based on Railroad Commission of Texas' Circular 4314, effective July 28, 1913, published in Texas Lines Tariff 22, providing a rate of 87c per ton, or 4½c per 100 pounds for distance of 170 and over 160 miles, which, of course, includes the distance of 165.5 miles (the distance from Beckman, Texas, to Corpus Christi, Texas) on 'rough stone (not crushed), including rough dressed or sawed, straight or mixed carloads.'

"2. General Order No. 28 promulgated by W. G. McAdoo, Director General of Railroads of the United States, effective June 25, 1918:

"(a) Named increase of 2c per 100 pounds on 'Stone, artificial and natural, building and monumental, except carved, lettered, polished or traced.'

"(b) Named increase of 1c per 100 pounds on 'Stone broken, crushed and ground.'

"3. Supplement 42 to Texas Lines Tariff 22, A. C. Fonda's I. C. C. No. 53, effective June 25, 1918, issued and published by the Director General of Railroads through A. C. Fonda, Agent, and filed with the Interstate Commerce Commission and the Railroad Commission of Texas, naming the rate increases authorized by General Order No. 28, as follows:

"(a) '14. Commodity Rates on Stone, Artificial and Natural, Building and Monumental, except Carved, Lettered, Polished or Traced, named in the following tariffs and supplements are hereby increased 2c per 100 pounds.

"'Texas Lines Tariff No. 22, I. C. C. 53, Supplements 25, 30, 33, 39 and 40, Texas Tariff Bureau Circulars No. 1–A, I. C. C. No. 55 and Supplements 5, 10, 16 and 17.'

"(b) '15. Commodity Rates on Stone, Broken, Crushed and Ground, including Agricultural Limestone, Chat, Fluxing Stone, Gannister, Quarry Scrap, Rip-Rap, Rubble, Slag, Sprawls and Stone Dust, named in the following tariffs and supplements are hereby increased 1c per 100 pounds:

"'Texas Lines Tariff No. 22, I. C. C. 53, and Supplements 25, 30, 33, 39 and 40 Texas Tariff Bureau Circular No. 55, and Supplements 5, 10, 16 and 17.'

"4. Texas Lines Tariff No. 22–A, A. C. Fonda's I. C. C. 72, A. C. Fonda's R. C. T. No. 7, issued Nov. 29, 1919, to be effective December 31, 1919, issued and published through A. C. Fonda, as agent, re-issuing and reproducing Railroad Commission of Texas Commodity Tariff No. 9–B on page 42, named rate on 'Rough Stone (not crushed) including rough dressed or sawed, straight or mixed carloads' as 5½c per 100 pounds.

"5. Supplement 8 to Texas Lines Tariff No. 22–A, A. C. Fonda's I. C. C. 72, filed

with the Railroad Commission of Texas as Fonda's R. C. T. No. 7, and filed with the Interstate Commerce Commission on the first day of April, 1920, being a 'reissue of rates, rules and regulations, established by the Railroad Commission of Texas as shown in their 27th Report for the year 1918, as increased by General Order No. 28, U. S. Railroad Commission.' Supplement 8 also contained a statement reading as follows:

" 'Issued to correct error in reissuing rate authorized by General Order No. 28 of the Director General of Railroads and Circular 5255 of the Railroad Commission of Texas.'

"This supplement fixed the rate on 'Rough Stone, (not crushed), including rough dressed or sawed,' at 6½¢ per 100 pounds.

"6. Decision of the Interstate Commerce Commission in Ex parte 74 [Increased Rates, 1920], reported in 58 I.C.C. 220 and decided July 29, 1920, allowing the defendant railroads a 35% increase in all rates on intrastate shipments. Order entered July 29, 1920, making this effective.

"7. The Railroad Commission of Texas denied the defendant railroads the increase of 35% in intrastate shipments, but allowed the defendant carriers to increase all 'current rates and charges' 33⅓% by Circular No. 5326.

"8. Supplement 13 to Texas Lines Tariff 22-A, A. C. Fonda's I.C.C. 72, filed with the Railroad Commission of Texas, and A. C. Fonda's R.C.T. No. 7 and filed with the Interstate Commerce Commission, issued under Railroad Commission of Texas Circular 5326, dated August 23, 1920, to be effective August 26, 1920, providing for an increase of 33⅓% on all 'the current rates and charges.'

"9. Supplement 14 to Texas Lines Tariff 22-A, A. C. Fonda's I.C.C. 72, or A. C. Fonda's R.C.T. No. 7, filed with the Railroad Commission of Texas and the Interstate Commerce Commission, on October 12, 1920, effective October 20, 1920, and reproducing Texas' Commodity Tariff No. 9-B, and providing for an increase of 33⅓% on all rates as authorized by the Railroad Commission of Texas' Circular No. 5326 and for the increase authorized by General Order No. 28 of U. S. Railroad Administration, and specifically naming a rate of 8½¢ per 100 pounds on 'Rough Stone, (not crushed) including rough dressed or sawed, straight or mixed carloads

* * *' for distances of 170 and over 160 miles.

"10. Report and order dated February 12, 1921, of the Interstate Commerce Commission in I.C.C. Docket No. 11764 [Intrastate Rates within the State of Texas], reported 60 I.C.C. 421 on complaint of the Texas Railroads filed under the 13th section of the Interstate Commerce Act, 49 U.S.C.A. § 13, finding that the acts of the Texas Railroad Commission in not allowing the 35% increase on all rates as authorized by the I.C.C. in Ex parte 74, and in only allowing a 33⅓% increase, caused discrimination in rates and ordered that such rates be increased to 35%.

"11. Supplement 19 to Texas Lines Tariff 22-A, A. C. Fonda's I.C.C. 102 (formerly A. C. Fonda's I.C.C. No. 72) filed with the Railroad Commission of Texas as A. C. Fonda's R.C.T. No. 7 and filed with the Interstate Commerce Commission, March 9, 1921, to be effective March 18, 1921, and reproducing Texas Commodity Tariff No. 9-B, and providing for an increase of 35% on all intrastate rates authorized under I.C.C. Docket No. 11764, and for the increase authorized by General Order No. 28 of the U. S. Railroad Administration and specifically naming a rate of 9¢ per 100 pounds on 'Rough Stone (not crushed) including rough dressed, or sawed, straight or mixed carloads * * *' for distances of 170 and over 160 miles.

"12. Texas Lines Tariff 22-B, A. C. Fonda's I.C.C. 109, filed with the Railroad Commission of Texas as A. C. Fonda's R. C.T. No. 32, and filed with the Interstate Commerce Commission May 26, 1921, effective July 5, 1921, and reproducing Texas Commodity Tariff No. 9-B, and providing for an increase of 35% on all rates as authorized under I.C.C. Docket No. 11764, and for the increase authorized by General Order No. 28 of the United States Railroad Administration, and specifically naming a rate of 9¢ per 100 pounds on 'Rough Stone (not crushed) including rough dressed or sawed, straight or mixed carloads * * *' for distances of 170 and over 160 miles.

"13. Railroad Commission of Texas Circular No. 5548, issued April 26, 1922, by the Railroad Commission of Texas, recognizing that the rates published in Texas Lines Tariff 22-B A. C. Fonda's I.C.C. No. 109, among other things had been continuously applied and were recognized

by the Railroad Commission of Texas as having been lawfully applied."

It was agreed by all parties that the commodity shipped was rough stone, or rocks, weighing more than 200 pounds per piece. In fact, there is no dispute as to the distance the rock was hauled, the number of cars, the weight, or any other fact other than the proper rate to be charged.

It is clear from the instruments above set forth that the rate on rough stone at the time the government took control of the railroads was 4½ cents per 100 pounds. This rate was increased to 5½ cents by Texas Lines Tariff No. 22–A, A. C. Fonda's I.C.C. 72, A. C. Fonda's R.C.T. No. 7, issued November 29, 1919, to be effective December 31, 1919, issued and published through A. C. Fonda, as agent. This rate was increased 33½ per cent. on August 26, 1920, which would increase the rate to 7½ cents per 100 pounds on rough stone. On February 12, 1921, the increase was ordered to be 35 per cent. rather than 33½ per cent., but on a basis of 5½ cents per 100 pounds the calculation would be the same, 7½ per cent. per 100 pounds, as small fractions are disregarded in making calculations.

Transportation Act of 1920, § 208 (a), 49 U.S.C.A. § 76(a), which provided for the return of the railroads to their owners, provided, among other things, as follows: "All rates, fares, and charges, and all classifications, regulations, and practices, in any wise changing, affecting, or determining, any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, were in effect on the lines of carriers subject to the Interstate Commerce Act [chapter 1], shall continue in force and effect until thereafter changed by State or Federal authority * * * of law."

Therefore a 5½ cents per 100 pounds was in effect at the time the railroads were returned to their owners, and this being increased only 35 per cent. by proper authority the legal rate was 7½ cents per 100 pounds on rough stone at the time the shipments were made.

Appellants claim that the 5½ cents contained in Texas Line Tariff No. 22–A, A. C. Fonda's I. C. C. 72, A. C. Fonda's R. C. T. No. 7, was an error, as it was at variance with General Order No. 28 promulgated by W. G. McAdoo, Director General of Railroads of the United States, and that this error was corrected by various supplements published by A. C. Fonda after the railroads had been returned to their owners. We overrule this contention. As the published tariffs stood when the railroads were returned to their owners, the rate was 5½ cents per 100 pounds, and this rate could only be changed by the Interstate Commerce Commission and the Railroad Commission of Texas. The Railroad Commission of Texas' order known as Circular No. 5548, issued April 26, 1922, could have no retrospective effect, and could not affect the rates on the shipments herein involved, which had all been made long before this circular was issued.

The above holdings are fully supported by the following authorities: Atlantic Coast Line Ry. Co. v. Railroad Commission of Georgia, D.C., 281 F. 321; Cannelton Sewer Pipe Co. v. Director General, 73 I.C.C. 27; Federal Control Act of March 21, 1918, 40 Stat. 451, c. 25; Houston Chamber of Commerce v. Railroad Commission of Texas, Tex.Civ.App., 19 S.W.2d 583; Magnolia Provision Co. v. Beaumont, S. L. & W. Ry. Co., D.C., 20 F.2d 384; Producers' Refining Co. v. Missouri, K. & T. Ry. Co. of Texas, Tex.Com.App., 13 S.W.2d 680; Railroad Commission of Louisiana v. Aransas Harbor Terminal Railway Co., 41 I.C.C. 83 and Id., 48 I.C.C. 312; Transportation Act of 1920, 41 Stat. 456; United States v. Miller, 223 U.S. 599, 32 S.Ct. 323, 56 L.Ed. 568; Van Dusen Harrington Co. v. Director General, 78 I.C.C. 729, 731.

Finding no error in the record, the judgment is affirmed.