11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                          Order

 

The Texas Development Company, as Leasing
Agent for LPS 529 #35, Ltd.

Appellant

Vs.                   No.  11-02-00045-CV B Appeal from Harris County

Exxon Mobil Corporation

Appellee

 

The motion
for rehearing filed by The Texas Development Company, as Leasing Agent for LPS
529 #35, Ltd., is granted.  Our former
opinion and judgment dated June 12, 2003, are withdrawn, and our opinion and
judgment dated September 11, 2003, are substituted therefor.  

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

September 11, 2003

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 








                                                             11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

The Texas
Development Company, as Leasing Agent for LPS 529 #35, Ltd.

Appellant

Vs.      
            No. 11-02-00045-CV B Appeal from Harris County

Exxon Mobil Corporation

Appellee

 

The trial
court entered summary judgment and rendered judgment that The Texas Development
Company, as Leasing Agent for LPS 529 #35, Ltd. (Texas Development), take
nothing against Exxon Mobil Corporation (Exxon).  We reverse and remand.

                                                                     Background           


Exxon and
IRC Structures and Systems (IRC) entered into Continuing Services Agreement
C35706, effective January 15, 1998 (the agreement).  Per the agreement, IRC performed services for Exxon on Exxon=s Heritage Platform drilling rig.  On July 1, 1998, IRC sent an invoice to
Exxon in the amount of $117,775.00 for services performed.  On September 18, 1998, IRC assigned its
right to receive payment of this invoice to Texas Development.  The assignment covered  IRC=s Aright title and interest in and to that certain
[July 1, 1998] invoice from [IRC] to [Exxon], being Invoice No. 00950940 in the
amount of $117,775.00.@ 

Reuel
Lataquin was the Chief Executive Officer of IRC and the President of R. L.
International, Inc.  In July 1998, R. L.
International, Inc. owed Texas Development the amount of $38,849.78 in past-due
monthly rent under the terms of a lease agreement.  IRC assigned the Exxon account receivable to Texas Development to
satisfy R. L. International, Inc.=s obligations under the lease. 
In exchange for the assignment, Texas Development agreed not to evict R.
L. International, Inc. from the leased premises.  








After
receiving notice of the assignment, Exxon paid the account to IRC at the
request of Lataquin.  Texas Development
demanded that Exxon pay it pursuant to the assignment, but Exxon refused.  Texas Development brought this action
against Exxon seeking to recover on the assignment.   Texas Development also asserted claims against Lataquin, both
individually and d/b/a R. L. International, Inc. and d/b/a IRC Structures &
Systems, for breach of the lease agreement. 
Exxon filed a motion for summary judgment, asserting that the assignment
was void due to an anti-assignment clause in the agreement and that the
election-of-remedies doctrine barred Texas Development=s claims against it.  Texas Development filed a motion for partial
summary judgment, asserting that the assignment was binding on Exxon.  The trial court granted Exxon=s motion and denied Texas Development=s motion in separate orders.  The trial court severed Texas Development=s claims against Lataquin, both individually
and d/b/a R. L. International, Inc. and d/b/a IRC Structures and Systems, from
this cause.  Exxon nonsuited its claims
against Texas Development and IRC. 
Thus, the summary judgment orders became final and appealable.

                                                                  Issues
Presented

In two
points of error, Texas Development complains that the trial court erred in
granting Exxon=s motion for summary judgment and in denying
its motion for partial summary judgment. 


                                                               Standard
of Review

Exxon and
Texas Development filed traditional motions for summary judgment.  We will apply the well-recognized standard
of review for traditional summary judgments. We must consider the summary
judgment evidence in the light most favorable to the non-movant, indulging all
reasonable inferences in favor of the non-movant, and determine whether the
movant proved that there were no genuine issues of material fact and that it
was entitled to judgment as a matter of law. Nixon v. Mr. Property Management
Company, Inc., 690 S.W.2d
546 (Tex.1985);
City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex.1979).

                            Texas
Development=s Objections to Summary Judgment Evidence








Texas
Development complains that the trial court denied its due course of law and due
process rights by entering a blanket order overruling all of its (1) special
exceptions to Exxon=s
motion for summary judgment and (2) objections to Exxon=s summary judgment evidence instead of
reviewing and ruling on each of the special exceptions and objections.  We disagree.  By entering the order, the trial court ruled on each of Texas
Development=s exceptions and objections.   We will now address Texas Development=s objections to the extent necessary for the
disposition of this appeal. 

Texas
Development objected to the admissibility of the agreement.  Exxon relied on the affidavit of Roy
Masonheimer in support of its motion, and a copy of the agreement was attached
to the Masonheimer Affidavit as Exhibit A1.@  In
his affidavit, Masonheimer stated that he had personal knowledge of the facts
stated in the affidavit; that in 1998 he was a division staff engineer for
Exxon; that he was a project engineer on the Heritage Platform drilling rig
upgrades; that on April 4, 1998, Exxon and IRC entered into the agreement to
perform engineering services on the Heritage Platform drilling rig; and that
Exhibit A1@ to the affidavit was a true and correct copy of the principal document
of the agreement.    

These
facts demonstrated that Masonheimer was competent to testify about the
agreement.  Masonheimer stated that
Exhibit A1@ to the affidavit was a true and correct copy of the principal document
of the agreement.  His affidavit was
properly sworn before a notary. 
Therefore, the trial court correctly considered the agreement as summary
judgment evidence.  See Republic
National Leasing Corporation v. Schindler, 717 S.W.2d 606, 607 (Tex.1986).

Additionally,
after Texas Development filed its objections to Exxon=s evidence, Exxon requested and obtained
leave of court to supplement the summary judgment record with the affidavit of
Jeff Marsh.  Exxon offered the Marsh
affidavit in an attempt to establish that the agreement satisfied the business
records exception to the hearsay rule. 
Texas Development did not object to the Marsh affidavit and, therefore,
waived any complaint that the agreement was not proper summary judgment
evidence.

                                    Validity
of the Anti-Assignment Clause in the Agreement            

Exhibit AA@ to the agreement defined the scope of IRC=s services under the agreement.  IRC agreed Ato provide the Services specifically set out in Exhibit A when and as
provided in a Work Order.@  Article 4.2 of the agreement
provided that each work order would be deemed to incorporate the terms of the
agreement.  Article 17 of the agreement
provided that: 








[IRC]
shall not assign this Agreement in whole or in part without the prior written
approval of Exxon which may be withheld for any reason. [IRC] shall not assign
any Work Order incorporating this Agreement in whole or in part (including any
sum accruing to [IRC]) without the prior written approval of User, which may be
withheld for any reason.  Any assignment
of this Agreement, or any Work Order, if approved by Exxon or the applicable
User, respectively, shall not relieve [IRC] of its responsibilities under this
Agreement or that Work Order.  

 

AUser@ is defined in the agreement as A[Exxon] or any Affiliate and their respective divisions that issue a
Work Order to [IRC] as provided in this Agreement.@  

Texas
Development asserts that the assignment was binding on Exxon because: (1) Exxon
did not include language in Article 17 that A[a]ny assignment made in violation of this provision is void and
unenforceable@; (2) Exxon did not include language in
Article 17 prohibiting Athe transfer of any rights,@ such as the right to receive payment for services performed; (3) Exxon=s anti-assignment clause was ineffective
under TEX. BUS. & COM. CODE ANN. ' 2.210(b) (Vernon  Supp. 2003);
and (4) Exxon=s anti-assignment clause was ineffective
under former TEX. BUS. & COM. CODE ' 9.318(d) (Vernon 1991).[1]


In Texas,
anti-assignment clauses are enforceable unless rendered ineffective by an
applicable statute.  Reef v. Mills
Novelty Co., 89 S.W.2d 210, 211 (Tex.1936).  In Reef, an employee assigned his right to payment under
an employment contract.  His employer
refused to accept the assignment.  The
employment contract provided that:

No assignment of your account, or any portion
of it, at any time, to be binding upon this company unless such assignment is
accepted and acknowledged by the company=s treasurer.

 

The
Commission of Appeals held that the assignment was not binding on the
employer.  The court explained:








The
precise question we are called on to decide is whether or not the parties to a
contract may, by agreement, render unassignable a money claim arising under the
contract.  Of course the parties cannot,
by such an agreement, remove the debt beyond the reach of our garnishment
statutes or any other applicable statute; but no reason occurs for denying to
the parties the right, so long as no statute is infringed, to bind themselves
to each other as they see fit, with respect to obligations imposed by the
contract.  In such a case a money claim
growing out of the contract, which comes to the hands of a third person,
remains subject to the terms of the contract. 
When the debtor has the contract right to ignore a voluntary transfer of
the claim, as in the instant case, no effective transfer can be made without
his consent.  His contract right must be
respected by third persons.   

 

Reef
v. Mills Novelty Co., supra
at 211.  

In Island
Recreational Development Corporation v. Republic of Texas Savings Association,
710 S.W.2d 551, 553 (Tex.1986), an anti-assignment clause in a letter of
commitment provided that A[t]his commitment is nontransferable or assignable to any other
individual, corporation or entity unless specifically approved in writing by
[lender].@  The
supreme court stated: A[B]y
the terms of the paragraph in question the letter of commitment was not
assignable without [lender=s] consent.@ Island
Recreational Development Corporation v. Republic of Texas Savings Association,
supra at 556.

In Texas
Farmers Insurance Company v. Gerdes, 880 S.W.2d 215 (Tex.App. B Fort Worth 1994, writ den=d), an accident victim assigned her rights to
recover as a third-party beneficiary under a liability insurance policy to her
chiropractor.  An anti-assignment clause
in the insurance policy provided that A[y]our rights and duties under this policy may not be assigned without
our written consent.@  Texas Farmers Insurance Company v. Gerdes,
supra at 218.  The court held that the
anti-assignment clause was valid and precluded the third-party beneficiary from
assigning her rights without the insurance company=s consent. 
Texas Farmers Insurance Company v. Gerdes, supra at 218.  The court explained:

[Anti]-assignment
clauses have been consistently enforced by Texas courts, Island Recreational
Dev. Corp. v. Republic of Texas Savings Ass=n, 710 S.W.2d 551, 556 (Tex.1986)(opinion on reh=g)(letter of commitment); Cloughly v. NBC
BankBSeguin, N.A., 773 S.W.2d 652, 655 (Tex.App. B San Antonio 1989, writ denied), and by the
Fifth Circuit applying Texas law.  Conoco,
Inc. v. Republic Ins. Co., 819 F.2d 120, 123 (5th Cir. 1987).                 

 

Texas
Farmers Insurance Company v. Gerdes, supra at 218.            








Texas
Development relies on Reuben H. Donnelley Corporation v. McKinnon, 688
S.W.2d 612 (Tex.App. B
Corpus Christi 1985, writ ref=d n.r.e.).  Albert A. Connell
and Reuben H. Donnelley entered into an advertising agreement.  An anti-assignment provision in the
agreement provided that the agreement Ashall not be assigned without the prior written consent of [Donnelley].@ 
Connell assigned the agreement to Thomas R. McKinnon without Donnelley=s consent.  
The court relied on RESTATEMENT OF CONTRACTS ' 322(2) (2d ed. 1981) in holding that the
anti-assignment clause did not render the assignment ineffective.  Section 322(2) provides in part:

A contract
term prohibiting assignment of rights under the contract, unless a different
intention is manifested, 

 

(b) gives
the obligor a right to damages for breach of the terms forbidding assignment
but does not render the assignment ineffective.  

 

The Donnelley
court concluded that Athe
contract term only forbids assignment; it does not render an assignment ineffective.@ Reuben H. Donnelley Corporation v.
McKinnon, supra at 615.  Relying on Donnelley,
Texas Development asserts that, while Exxon=s anti-assignment clause forbade assignment, the clause did not render
IRC=s assignment ineffective because it lacked
language that any assignment made in violation of this provision is void and
unenforceable.  However, we are bound by
Reef and Island Recreational Development Corporation.  The anti-assignment clauses in Reef and
Island Recreational Development Corporation did not contain (1) language
that any assignments made in violation of this provision were void or (2)
language prohibiting the transfer of any rights.  Yet, the Commission of Appeals and the Texas Supreme Court
determined that the anti-assignment clauses were enforceable.  Likewise, Exxon=s anti-assignment clause was enforceable
unless it infringed on an applicable statute. 
Reef v. Mills Novelty Co., supra at 211.

                                  Applicability
of Chapter 2 of the Uniform Commercial Code 








Texas
Development asserts that Section 2.210(b) of the Uniform Commercial Code (UCC)
rendered Exxon=s anti-assignment clause ineffective.  Section 2.210(b) provides that Aa right arising out of the assignor=s due performance of his entire obligation
can be assigned despite agreement otherwise.@  Section 2.210(b) is in Chapter
2 of the UCC.  Chapter 2 applies to
transactions involving the sale of goods. 
See TEX. BUS. & COM. CODE ANN. ' 2.102 (Vernon 1994); G-W-L, Inc. v. Robichaux, 643 S.W.2d 392,
394 (Tex.1982).   Chapter 2 does not
apply to transactions involving the rendition of personal services.  Montgomery Ward & Company, Inc. v.
Dalton, 665 S.W.2d 507, 511 (Tex.App. B El Paso 1983,  no writ).   If a contract involves the sale of goods
and services, Chapter 2 applies if the sale of goods is the Adominant factor@ or Aessence@ of the transaction.  G-W-L,
Inc. v. Robichaux, supra at 394; Westech Engineering, Inc. v. Clearwater
Constructors, Inc., a Division of Phelps, Inc., 835 S.W.2d 190, 197
(Tex.App. B Austin 1992, no writ); Montgomery Ward
& Company, Inc. v. Dalton, supra at 511; Freeman v. Shannon
Construction, Inc., 560 S.W.2d 732, 738 (Tex.Civ.App. B Amarillo 1977, writ ref=d n.r.e.). 

The
agreement involved the sale of goods and IRC=s furnishing of engineering services in connection with the design,
fabrication, and installation of rig modifications.  The summary judgment evidence established that the Adominant factor@ or Aessence@ of the agreement was IRC=s furnishing of engineering services to Exxon.  Exhibit AA@ to the agreement provided that:

This Agreement enables [IRC] to provide to Exxon, at the
request of the Exxon representative, design of Heritage Platform drilling rig
modifications, including fingerboard, piperack and mud tanks; fabrication and
installation of fingerboard and piperack modifications; and structural
assessment of the drilling unit with respect to offshore California seismic
activity.

 

Masonheimer
and Lataquin stated in their affidavits that the primary purpose of the
agreement was IRC=s
providing of engineering services to Exxon. 
In the $117,775.00 invoice in question, IRC billed Exxon for 455 hours
of engineering services, fabrication of racking board, and fabrication of
derrick tarp supports.  The rig modifications
required engineering expertise, and Exxon hired IRC to provide that
expertise.     

G-W-L, Inc. v. Robichaux, supra, involved a contract for the construction and sale of a
house.  In holding that Chapter 2 of the
UCC did not apply to the transaction, the supreme court explained:

Additionally,
building contracts involve the sale of both services and materials.  In such hybrid transactions, the question
becomes whether the dominant factor or Aessence@ of the transaction is the sale of the
materials or the services.  The contract
in this case provided that Goldstar would Abuild, construct, and complete...and furnish and provide all labor and
material to be used in the construction and erection thereof.@ 
Clearly, the Aessence@ or Adominant@ factor of the transaction was the furnishing
of labor and the performance of work required for constructing the house.  (Citation omitted)  

 

G-W-L,
Inc. v. Robichaux, supra at
394.  Similarly, in this case, the Aessence@ or Adominant factor@ of the transaction was IRC=s furnishing of engineering services in connection with the design,
fabrication, and installation of the rig modifications.  Chapter 2 of the UCC does not apply to the
agreement.

                                 Applicability
of Chapter 9 of the Uniform Commercial Code           








            Texas
Development asserts that Exxon=s anti-assignment clause was ineffective under former Section 9.318(d)
of Chapter 9 of the UCC.   Former
Section 9.318(d) was in effect at the time of IRC=s assignment to Texas Development. 
Former Section 9.318(d) provided that: 

A term in
any contract between an account debtor and an assignor is ineffective if it
prohibits assignment of an account...for money due or to become due or requires
the account debtor=s
consent to such assignment or security interest.

Chapter 9
of the UCC governs secured transactions. 
Section 9.104 defined the scope of coverage of Chapter 9 at the time of
IRC=s assignment.  Former TEX. BUS. & COM. CODE ' 9.104 (Vernon 1991); now TEX. BUS. & COM. CODE ANN. ' 9.109 (Vernon 2002).    Section 9.104(6) expressly excepted a
number of transactions from coverage under Chapter 9, including Aa transfer of a single account to an assignee
in whole or partial satisfaction of a preexisting indebtedness.@ 
Exxon asserts that IRC=s assignment of the Exxon account fell within this exception.   

Texas
Development argues that the assignment did not fall within the Apreexisting indebtedness@ exception to Chapter 9 because IRC made the
assignment not only to satisfy its preexisting indebtedness (past-due rental
obligations), but also to secure its future obligations (future monthly
rentals) under the lease.  When a lessee
is obligated to pay rent in the future, the debt does not arise until the time
for payment arises.  American Lease
Plan v. Ben-Kro Corporation, 508 S.W.2d 937, 942 (Tex.Civ.App. B Houston [1st Dist.] 1974, writ ref=d n.r.e.); see also Gentry v. Bodan,
347 F. Supp. 367, 374 (W. D. La. 1972). 
Therefore, IRC=s
future rental obligations under the lease did not constitute Apreexisting indebtedness.@ 
Accordingly, if IRC made the assignment, in part, to secure its future
performance under the lease, the assignment did not fall within the Apreexisting indebtedness@ exception to Chapter 9.  See Board of Trustees of Vacation
Trust Carpenters Local No. 1780 v. Durable Developers, Inc., 724 P.2d 736,
745 (Nev.1986)(AThere is no statutory authority for splitting
the assignment and finding a portion of the transfer exempt from Article Nine
and a portion of the same assignment subject to the provisions of Article Nine@).  








  Neither party presented summary judgment
evidence establishing the amount of past-due rent that IRC owed Texas
Development on the date of the assignment. 
Exxon did not establish that IRC assigned the account to Texas
Development only to satisfy preexisting indebtedness.  Texas Development filed the affidavit of James E. Petersen, Sr.
in support of its response to Exxon=s motion for summary judgment. 
In his affidavit, Petersen stated that IRC made the assignment to
satisfy its past-due rental obligations and to secure its future
performance under the lease.  He further
stated that IRC also assigned an Oceaneering Intervention Engineering, Inc.
account receivable to Texas Development and that the assignments of the Exxon
and Oceaneering Intervention accounts represented far more money than IRC owed
Texas Development.  We find that
Petersen=s affidavit raised fact issues on Exxon=s claim that the assignment fell within the Apreexisting indebtedness@ exception in Section 9.104(6).

Section
9.104(6) also provided that Chapter 9 did not apply to Aan assignment of accounts... for the purpose
of collection only.@  Exxon asserts that IRC=s assignment fell within this exception to
Chapter 9.  This exception generally
applies when accounts are assigned to a collection agency for collection.  See Tradex, Inc. v. Modern
Merchandising, Inc., 386 N.W.2d 800, 802 (Minn. Ct. App. 1986); Daly v.
Shrimplin, 610 P.2d 397, 401 (Wyo.1980). 
IRC did not assign the Exxon account for the purpose of collection
only;  IRC assigned the account to Texas
Development, at least in part, because it owed Texas Development past-due
rents.  Therefore, the assignment did
not fall within the Aassignment...for
the purpose of collection only@ exception.

                                              Texas
Development=s
Affirmative Defenses  

Texas
Development asserts that the summary judgment evidence raised fact issues on
its  affirmative defenses. Texas
Development alleged six affirmative defenses, including waiver, in response to
Exxon=s claim that IRC=s assignment to Texas Development was void as
a result of the anti-assignment clause in the IRC-Exxon agreement.  A party relying on an affirmative defense to
defeat summary judgment must come forward with summary judgment evidence
establishing a fact issue on each element of the affirmative defense.  American Petrofina, Inc. v. Allen,
887 S.W.2d 829, 830 (Tex.1994); Brownlee v. Brownlee, 665 S.W.2d 111,
112 (Tex.1984).     








Texas
Development relied on Petersen=s affidavit to support its defenses. 
Exxon did not raise any objections to the affidavit.  In his affidavit, Petersen stated, in part:
(1) that Texas Development, as lessor, and IRC, as lessee, entered into a lease
agreement; (2) that IRC failed to pay monthly rentals when due under the lease
agreement; (3) that Texas Development instituted eviction proceedings against
IRC; (4) that the court issued a writ of possession to the constable to evict
IRC from the leased premises; (5) that Lataquin requested Petersen to stop the
eviction process in return for IRC=s assignment of an Exxon account receivable in the amount of
$117,775.00 and assignment of an Oceaneering Intervention account receivable in
the amount of $28,723.00; (6) that the assignments were to be used as security
to guarantee IRC=s performance under the lease; (7) that the
assignments represented far more money than IRC owed Texas Development; (8)
that Exxon and Oceaneering Intervention confirmed the receivables would be paid
when IRC completed the work; (9) that IRC assigned the accounts to Texas
Development; (10) that Petersen stopped the eviction process based on Exxon=s and Oceaneering Intervention=s confirmations that the receivables would be
paid when IRC completed the work; (11) that, by letter dated September 25,
1998, and received by Exxon on September 28, 1998, Texas Development provided
Exxon with notice of the assignment; 
(12) that the September 25, 1998, letter requested Exxon to notify Texas
Development if Exxon would not comply with the assignment; (13) that Exxon did
not inform Texas Development that the invoice was not assignable; (14) that, if
Exxon had informed Texas Development that it would not honor the assignment,
then Texas Development would have continued with the eviction process or would
have demanded that IRC furnish at least $117,775.00 of other receivables or
assets; (15) that on February 2, 1999, Texas Development demanded Exxon to pay
it under the assignment; (16) that on February 3, 1999, Exxon informed Texas
Development that, after receiving notice of the assignment, it had mistakenly
paid the account to IRC at the request of Lataquin; (17) that Exxon did not
take the position that the assignment was void until it filed its motion for
summary judgment in this cause; and (18) that, by failing to notify Texas
Development that it would not honor the assignment, Exxon is estopped to deny
the validity of the assignment and Exxon waived the non-assignability clause in
the IRC-Exxon agreement.








Waiver
occurs when a party either intentionally relinquishes a known right or engages
in intentional conduct inconsistent with claiming that right.  In re Epic Holdings, Inc., 985 S.W.2d
41, 57 (Tex.1998); Sun Exploration and Production Company v. Benton, 728
S.W.2d 35, 37 (Tex.1987).  A party=s express renunciation of a known right can
establish waiver.  Tenneco Inc. v.
Enterprise Products, Company, 925 S.W.2d 640, 643 (Tex.1996)(citing Alford,
Meroney & Company v. Rowe, 619 S.W.2d 210, 213 (Tex.Civ.App. B Amarillo 1981, writ ref=d n.r.e.)). 
Or, a party=s
silence or inaction, for so long a period that it shows an intention to yield
the known right, is also enough to prove waiver.  Tenneco Inc. v. Enterprise Products Company, supra (citing
Alford, Meroney & Company v. Rowe, supra).  Waiver is ordinarily a question of fact.  Tenneco Inc. v. Enterprise Products
Company, supra.  

The
well-established standards for reviewing a summary judgment require that we take
Petersen=s affidavit as true, indulge every reasonable
inference in favor of Texas Development, and resolve any doubts in its
favor.  Nixon v. Mr. Property
Management Company, Inc., supra at 548-49. 
Applying these standards, we find that Petersen=s affidavit raised fact issues on all of the
elements of its defense that Exxon waived the non-assignability clause in the
IRC-Exxon agreement.  Thus, Texas
Development defeated Exxon=s motion for summary judgment by its assertion and proof of fact issues
on an affirmative defense.[2]


                                                 Exxon=s Election-of-Remedies Defense

In its
motion for summary judgment, Exxon asserted that the election-of-remedies
doctrine barred Texas Development=s claims against it.  Exxon
contends that the election doctrine bars Texas Development from recovering
against it because  Texas Development Aelected to pursue the $117,500 [assigned
amount] from IRC rather than [Exxon].@     

An
election of remedies has been defined by the Texas Supreme Court as Athe act of choosing between two or more
inconsistent but coexistent modes of procedure and relief allowed by law on the
same state of facts.@  Custom Leasing, Inc. v. Texas Bank &
Trust Company of Dallas, 491 S.W.2d 869, 871 (Tex.1973).  The election doctrine may constitute a bar
to relief Awhen (1) one successfully exercises an
informed choice (2) between two or more remedies, rights, or states of facts
(3) which are so inconsistent as to (4) constitute manifest injustice.@  Bocanegra
v. Aetna Life Insurance Company, 605 S.W.2d 848, 851 (Tex.1980)(citing Custom
Leasing, Inc. v. Texas Bank & Trust Company of Dallas, supra).  








To obtain
summary judgment on its election defense, Exxon had the burden to prove
conclusively all of the elements of the defense as a matter of law such that
there was no genuine issue of material fact. 
Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.1995).  Texas Development is attempting to recover
from Exxon under the assignment and from IRC for breach of two lease
agreements.  Exxon did not present any
summary judgment evidence that Texas Development has pursued or is pursuing
inconsistent remedies or that Texas Development=s pursuit of the remedies constitutes manifest injustice.  Exxon did not meet its summary judgment
burden on its election-of-remedies defense.

                                                                This
Court=s Ruling

The trial
court erred in granting summary judgment to Exxon because:  (1) Exxon failed to  establish, as a matter of law, that Chapter
9 of the UCC did not apply to the assignment and (2) the summary judgment
evidence raised fact issues on Texas Development=s waiver defense.  Therefore,
Texas Development=s
first point of error is sustained.  The
trial court did not err in denying Texas Development=s motion for partial summary judgment because
the summary judgment evidence raised fact issues on Texas Development=s claim that the assignment was binding on
Exxon.       

The
judgment of the trial court is reversed, and this cause is remanded to the
trial court for further proceedings in accordance with this opinion. 

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

September 11, 2003

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











     [1]The legislature amended Chapter 9, effective July 1,
2001.  Former Section 9.318 is now found
in TEX. BUS. & COM. CODE ANN. '
9.408 (Vernon 2002).   





     [2]In its response to Exxon=s
motion for summary judgment, Texas Development also asserted an estoppel
defense.  Because we sustain Texas
Development=s first point of error on the basis of its waiver
defense, we do not address the estoppel issue. 
See Rucker v. Bank One Texas, N.A., 36 S.W.3d 649, 652 (Tex.App. B Waco 2000, pet=n
den=d).